**COCHECO WOOLEN MFG. CO. et al. v. MYERS, Acting Regional Director, et al.**

No. 286.

District Court, D. New Hampshire.

Oct. 30, 1936.

Hughes & Burns (by Stanley M. Burns), of Dover, N. H., for plaintiff.

A. Howard Myers and Laurence A. Knapp,·of Washington, D. C., for National Labor Relations Board.

MORRIS, District Judge.

This is a suit in equity filed by the Cocheco Woolen Manufacturing Company and the Employees' Protective Association, both of East Rochester, N. H., praying for an injunction against A. Howard Myers, Acting Regional Director of the National Labor Relations Board, to restrain the board and its agents from holding a hearing February 24, 1936 at said East Rochester to determine whether the Petitioners were guilty of unfair labor practices.

After several preliminary hearings, the case came before this court on motions to quash the subpœna and dismiss the action for want of equity. The motions were denied and the case set for hearing on its merits September 2, 1936. The parties appeared by counsel and were heard. The motion to dismiss the action was reargued by counsel for the National Labor Relations Board and evidence taken upon the merits of the controversy.

The court adheres to its former ruling denying the motion to dismiss and will now dispose of the case upon its merits.

In order for a correct understanding of the case and the sequence of events leading up to the notice of a hearing by the National Labor Relations Board, it is necessary to recite at some length the facts established at the hearing of the case upon its merits.

The Cocheco Woolen Manufacturing Company is a corporation organized under the laws of the state of New Hampshire with a sole place of business at East Rochester, N. H., and is engaged in the manufacture of woolen goods. On April 9, 1935, the company, then employing about 300 persons, closed its factory and all employees were paid in full. Thereafter an entirely new personnel was elected, new agents appointed, new money obtained, and on, May 27, 1935, the mill reopened under its new management. Prior to the reopening a notice was posted establishing a new wage scale and new hours of labor. All former employees desiring employment were asked to apply for work. One of the defendants, Local No. 2356, a branch of the United Textile Workers of America, a former organization working under the old management of the mill, voted to strike. When the mill reopened on May 27, the members of the union and their associates congregated about the mill entrance and interfered with those desiring to work to such an extent that it was necessary to close the mill on May 28 after it had operated for one and one-half days.

Thereafter the mill management received a petition signed by approximately two hundred of its former employees requesting that the mill reopen, and in accordance with this petition it was again reopened on June 10, 1935, under the protection of forty policemen engaged by the city of Rochester. The police were unable to control the activities of the strikers, and the mill again closed on June 14, 1935. Subsequently the mill management received June 20, another petition signed by approximately 600 citizens of East Rochester requesting the mill to reopen to give employment to those desiring to work. As a result of the attempts to open the mill and the several petitions, the Employees' Protective Association, one of the petitioners, was formed. It is a voluntary association formed under the Voluntary Corporation Act of New Hampshire (Pub.Laws 1926, c. 223, § 1 et seq.), and its membership consists of those desiring employment in the Cocheco mill. The date of its organization is June 22, 1935. The testimony tended to show, and I find it to be a fact, that the Cocheco Company had no part in its

organization and did not contribute to its financial aid.

After the Employees' Protective Association was organized, a petition was filed on behalf of the Cocheco Company and the Protective Association in the superior court for Strafford county, N. H., seeking an injunction against the members of Local No. 2356 restraining them from interfering with the operation of the mill and its employees. On July 2, 1935, a temporary injunction was issued by Hon. Oscar L. Young, justice of the New Hampshire superior court, enjoining the members of the union from interfering with the operation of the mill and those employed there. On July 8, 1935, the mill reopened under protection of the injunction and ten deputy sheriffs paid by the Cocheco Company at an expense of $6,943.90.

The plant continued to operate continuously thereafter without any further interference or action on the part of the union until the notice of a hearing to be held February 24, 1936, before the National Labor Relations Board, was received on February 15.

Prior thereto in November, 1935, a hearing was held on the merits of the petition for an injunction filed in the state court before a master, who found the facts, and on February 7, 1936, a decree was entered making the injunction permanent.

A complaint before the National Labor Relations Board was instituted by one Horace J. Brouillette claiming to be a representative of the United Textile Workers of America. He was not at the time, and never had been, an employee of the Cocheco Company.

At one of the hearings held before this court, the president of the union testified that Brouillette filed the complaint without his authorization and without the authorization of any vote taken by the union. Brouillette testified that he was an employee and representative of the United Textile Workers of America; that he lived in Manchester, N. H., and drew a salary of $25 per week. During the acute period of the strike Brouillette was in charge and advisor for the strikers at East Rochester.

At the time the complaint was filed against the Cocheco Company, the pay roll for the week ending February 15, 1936, was $8,070.46, and the company was employing 376 persons, 286 males and 90 females, some of whom were former members of the Local Union No. 2356.

The permanent injunction granted by the state court was in force and the relationship between the company and its then employees was peaceful and harmonious.

This, in brief, is the condition of the affairs of the Cocheco Company down to February 15, 1936, when charges were filed by Brouillette.

On February 20, 1936, this petition for a temporary injunction and restraining order was filed. A temporary restraining order was granted and the hearing appointed for February 24, 1936, by the board was postponed. On February 27, 1936, there was a hearing before the court, and again on March 10, 1936, there was another hearing and the case continued to March 18, 1936, at which time the temporary restraining order was vacated for lack of service, and it was ordered that Horace J. Brouillette be made a party defendant and that service be made on him. After the temporary restraining order was vacated, the board on April 20 gave notice of a hearing to be held April 27. Apparently in anticipation of the board's action the petitioner filed on April 13, a motion for a renewal of the temporary restraining order, which was granted, and the board again postponed its hearing. On April 27, at a hearing before the court, A. Howard Myers entered a general appearance for himself and a special appearance for members of the National Labor Relations Board. Counsel filed two motions, one to quash the subpœna as to the members of the board, and the other to dismiss the proceedings on the ground that there was no equitable jurisdiction. These motions were argued orally by counsel and elaborate briefs filed.

On August 1, 1936, both motions were denied and the case set for hearing on its merits September 2, 1936. Counsel for the parties appeared and evidence was offered and taken in behalf of the petitioners and witnesses were cross-examined by counsel for the National Labor Relations Board. The evidence established the facts herein set forth as to the condition of the Cocheco Woolen Company on February 24, 1936, at the time fixed by the board for its first hearing and the facts and circumstances leading up to the time as hereinabove set forth.

The complaint filed by the board alleges unfair labor practices, in that the Cocheco Company had refused to bargain collectively with the union or its representatives

with respect to rates of pay, wages, hours of employment, and other conditions of employment, and had refused to employ individuals who were members of the union.

In its petition filed in this court the Cocheco Company avers that the National Labor Relations Act, 29 U.S.C.A. § 151 et seq., is unconstitutional, and that, if constitutional, that it is not applicable to the Cocheco Company because it is not engaged in interstate commerce. It further avers as follows: (26) "That if said National Labor Relations Board is permitted to conduct said hearing on Feb. 24, 1936, or at any adjournment thereof and that if the allegations alleged in said petition and complaint should be found to be true irreparable injury and loss would result to said Company and Association, and when said proceedings have been carried through to their intended consummation in the manner provided in said National Labor Relations Act said Company will be ordered to cease and desist from continuing to operate their entirely lawful business and if they disobey that order they will be punished for contempt." It is further alleged that by reason of the filing of the complaint the business of the company will be interrupted and subjected to large and irrecoverable expense and the good will of the company will be affected and it will be held up as an object of public ill will and scorn.

The important question for the court to consider is whether the evidence discloses facts which will bring the case within the principles of equity jurisdiction, and that the petitioners have no adequate remedy at law.

The allegation that the act is unconstitutional standing alone is not ground for equitable relief. The mere allegation of irreparable injury is not sufficient. But there is set out in the petition facts and circumstances supporting the petitioners' claims that the business of the Cocheco Company will be seriously interfered with and the association's rights jeopardized if hearings before the National Labor Relations Board are held and evidence taken to establish unfair labor practices.

The case must be determined on the conditions existing at the time the board gave notice of its hearing to be held February 24, 1936.

The salient facts which I find are established by the evidence are that prior to April 9, 1935, when the company decided to close its plant, there was no labor trouble between it and its operatives; that it closed down for an indefinite length of time; that subsequently the personnel and management of the company was entirely changed; that notices were posted inviting all former employees and others desiring work to put in their applications; that the members of Local No. 2356 who had never been employed by the new management organized and voted to strike; that on two occasions unsuccessful attempts to open the mill were made; that persons who desired to work were threatened, intimidated, stoned, assaulted, annoyed, and subjected to abusive treatment; that large sums of money were expended by the corporation in its attempt to maintain order; that it was unsuccessful in so doing and had to close its doors; that it applied to the state superior court for a temporary injunction which was granted and thereafter on February 7, 1936, upon full hearing, was made permanent; that the new employees of the company organized for their protection the Employees' Protective Association; that said association was not financed or aided in any way by the Cocheco Company; that following this action of the superior court and while the Local Union, its aiders and abettors, were under the injunction, complaint was made to the National Labor Relations Board, which on February 15th gave notice of a hearing to be held on February 24th; that at that time the mill was in full operation and had been since July 8, 1935, under the protection of the injunction, and apparently matters had quieted down and the mill was running harmoniously and smoothly. It is apparent that Brouillette, without any authority or vote of the union, as a last resort filed the complaint with the board.

Considering all these facts, to hold a hearing before the board would result, as one witness described it, like putting salt on raw flesh.

Of course the ultimate object of the complaint was to determine such a wage scale, hours of labor, and other conditions such as the union was demanding. Another and still more important object to be gained was the displacement of more than 300 employees and employment of members of the union with wages for the intervening time which they had never earned. Certainly it cannot be said that to hold a hearing with those objects in view would not result in strife between those employed

and members of the union with a consequent interruption of the business of the company entailing irreparable and unrecoverable loss and expense.

I find that the petitioners have established by ample evidence the allegations of their petition in this respect.

If upon hearing by the board the complaint were dismissed, no benefit would be derived by the union, but if it established its contentions and the board found that the Cocheco Company was guilty of unfair labor practices, then the original causes of the strike would be reopened and dissension and strife would follow.

I cannot lend my aid to any such result as I view the facts of this case.

It is claimed that the National Labor Relations Act is unconstitutional. It is also claimed that if it is found to be constitutional that it is not a ground of equity jurisdiction. I so hold. But when taken into consideration with other facts tending to establish irreparable injury, the court cannot help considering the two in conjunction with each other.

I do not hold that the act is wholly unconstitutional, but I do hold that as applied to the Cocheco Woolen Manufacturing Company it has no application. There may be, and probably are, companies employing men who are engaged in interstate commerce to such extent that they would come within the act, but upon the facts before me I find that the Cocheco Woolen Manufacturing Company with reference to its production employees is not engaged in interstate commerce.

Holding as I do that such is the fact and that the act cannot be applied to the Cocheco Company, and finding as I do that a hearing held by the board would accomplish nothing except to stir up strife, with the possible result of displacement of over 300 operatives of the mill and irreparable injury to the corporation, I hold that the petitioners are entitled to injunctive relief.

A draft order may be presented enjoining A. Howard Myers, the National Labor Relations Board and Horace J. Brouillette from in any way interfering with the operations of the Cocheco Woolen Company or the Employees' Protective Association.

Local Union No. 2356, according to the evidence, has been disbanded and its charter surrendered. In any event, it is still under an injunction issued by the superior court, and it and all other individuals named in said injunction need not be named in the injunction herein ordered.